SILBERMAN, Senior Circuit Judge,
concurring in the judgment:
At oral argument, I asked counsel for the NAACP (originally the intervenor) the following hypothetical. Suppose a new Congress were to pass a version of the Voting Rights Act that was discriminatory to African-American voters. If you sued and prevailed on grounds that the new statute violated both the “right to vote” under the Fifteenth Amendment (which protects against interference by both the states and the United States), as well as the right to vote pursuant to the equal protection clause of the Fourteenth Amendment, see Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), would you be entitled to attorney’s fees under the Voting Rights Act. The answer was unequivocally yes, and I think that is correct.
But that dialogue demonstrates two logical flaws in the court’s opinion. The first is that the attorney’s fees provision does not speak to suits to enforce the Voting Rights Act, similar to prior cases dealing with civil rights statutes, but “rather an action or proceeding to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments.” In other words, a suit that challenges the constitutionality of a version of the Voting Rights Act can not be rejected merely because it challenges the Voting Rights Act. Therefore, much of the court’s discussion on this point is irrelevant.
The second logical flaw, similar to the first, which the district court and Judge *1191 Griffith’s opinion emphasize, is that it is allegedly inconceivable that any Congress would authorize attorney’s fees for an action challenging the legality of the very statute in which attorney’s fees are authorized. The problem is that the statute authorizing attorney’s fees was passed in 1975, whereas the recent statute challenged in this case was passed in 2006.[1] So, whether attorney’s fees are allowed depends not on the view of the recent Congress, but rather on the words of the 1975 Congress.
I also disagree with the government that Shelby County could not have recovered fees becausé its lawsuit was inherently one on behalf of state autonomy. Actually, the original ease could have been framed as one protecting the rights of individual voters in governed jurisdictions not to be discriminated against under the Fourteenth and Fifteenth Amendments. After all, the Section 5 procedure did limit the ability of voters to expeditiously change various voting practices and insofar as the formula for inclusion of covered jurisdictions was arbitrary, it was discriminatory. (Indeed, Section 2 of the Fourteenth Amendment actually speaks of preventing the right to vote of anyone being in any way “abridged.”[2])
Nevertheless, I concur in the judgment in this case because I agree with Judge Tatel that the original suit was not brought on behalf of the individual voting rights of the citizens of Shelby County. Whether this goes to eligibility or entitlement — the concepts are interrelated in the court’s opinion — it is sufficient to conclude the action was not brought to enforce the voting guarantees of the Fourteenth or Fifteenth Amendment. It is simply not enough to rely, as does Shelby County, on their original argument that the statute was not “appropriate” within the meaning of those amendments, because its claim of inappropriateness — at least originally— was only based on precepts of federalism of the Tenth Amendment, not individual voting guarantees.

. Although a specific remedy is provided. It is not clear whether, and if so, how, it may be implemented by statute; in any event, it was not relied upon by Shelby County.